UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

UNITED STATES OF AMERICA

|  |  |  |
|---|---|---|
| | ) | |
| v. | ) | No. 4:97CR00200-03 JLH |
| | ) | |
| | ) | |
| JAMES GOOLSBY | ) | |

## MOTION FOR RE-SENTENCING
## AND IMPOSITION OF A REDUCED SENTENCE
## PURSUANT TO SECTION 404 OF THE FIRST STEP ACT OF 201

James Goolsby is serving concurrent sentences for cocaine base offenses imposed under the 1986 Anti-Drug Abuse Act. The penalties for those offenses were reduced by the Fair Sentencing Act (FSA),[1] and made retroactive by the First Step Act.[2] The First Step Act authorizes this Court to impose reduced sentences in this case. The Court should impose concurrent sentences of 300 months.

We proceed in two parts. First, we briefly review the procedural history. Second, we discuss the First Step Act, and explain why the Court should impose reduced concurrent sentences of 300 months.

---

[1] 124 Stat. 2372 (2010).

[2] S.756, First Step Act (Dec. 21, 2018) (available at https://www.congress.gov/bill/115th-congress/senate-bill/756/text?r=115&s=3).

### 1.    Procedural History

On May 14, 1999, a jury convicted Mr. Goolsby of conspiracy to possess with intent to distribute more than 50 grams of cocaine base, in violation of 21 U.S.C. § 846, and possession with intent to distribute more than 50 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1).  (DCD 170).

Mr. Goolsby's statutory mandatory minimum sentence was 10 years, and the statutory maximum sentence was Life.   In calculating Mr. Goolsby's mandatory guidelines range, the Presentence Investigation Report (PSR) determined that he was responsible for 6.5 kilograms of cocaine base, which resulted in a base offense level of 38.  (PSR, para. 23).  Mr. Goolsby objected to the PSR's drug quantity finding at sentencing.   (S. TR., pp. 4-5).[3]  An uncertified copy of the sentencing transcript indicates that the district court found that Mr. Goolsby was involved in a conspiracy involving at least 1.5 kilograms, which also resulted in a base offense level of 38. (S. TR., p. 43).  Additionally, based on the PSR's recommendation, the district court applied the following enhancements: a three-level enhancement, pursuant to USSG §3A1.2(b), for assaulting a corrections officer during an attempt to escape;[4] a four-

---

[3] Sentencing Transcript (Uncertified Copy).

[4] The Eighth Circuit found that the district court erred in applying this three-level enhancement for assaulting a corrections officer. *United States v. Goolsby*, 209 F.3d 1079, 1081-82 (8th Cir. 2000).  However, because a life sentence was still required after the three-level enhancement was removed, the Eighth Circuit concluded that the error was harmless. *Id.* at 1082.

2

level enhancement, pursuant to USSG § 3B1.1(a), because he was a leader of criminal activity; a two-level enhancement, pursuant to USSG §3C1.1, for obstruction of justice; and a two-level enhancement, pursuant to USSG §3C1.2, for recklessly creating a substantial risk of death or serious bodily injury to another in the course of fleeing from a law enforcement officer. (PSR, paras. 26-29; S. TR, pp. 43-45). In sum, Mr. Goolsby's total offense level was 49. (PSR, para. 30; S. TR., p. 45). With a criminal history category (CHC) of VI, Mr. Goolsby's mandatory guidelines range was life imprisonment. (PSR, paras. 48 and 65.)

Noting that the Guidelines prescribed only one sentence and one sentence only, the district court sentenced Mr. Goolsby to life imprisonment on both counts, to run concurrently. (S. TR., p. 45; DCD 150).

## 2.    First Step Act

Mr. Goolsby was sentenced under the 1986 Anti-Drug Abuse Act. That Act treated cocaine base offenses 100 times more severely than powder cocaine offenses.[5] The 1986 Act: (1) overstated the severity of cocaine base offenses,[6] (2)

---

[5] The Anti-Drug Abuse Act of 1986, "adopted a 100-to-1 ratio that treated every gram of crack cocaine as the equivalent of 100 grams of powder cocaine." *Kimbrough v. United States*, 552 U.S. 85, 96 (2007). Derogating its "characteristic institutional role", the United States Sentencing Commission imported the 100-1 ratio into the federal sentencing guidelines. 552 U.S. at 109. When establishing the crack guidelines, the "Commission looked to the mandatory minimum sentences set in the 1986 Act, and did not take account of empirical data and national experience." *Id.*

[6] *Kimbrough*, 552 U.S. at 97-98 (cleaned up) (noting the Sentencing Commission's conclusion that the "ratio Congress embedded in the statute far overstates both the relative harmfulness of crack cocaine, and the seriousness of most crack cocaine offenses."); *See generally* USSC, *Special Report to the Congress: Cocaine and Federal Sentencing Policy* 197–198 (Feb. 1995); USSC, *Special Report to Congress: Cocaine and Federal Sentencing Policy* 8 (Apr. 1997); USSC, *Report to Congress: Cocaine and Federal Sentencing Policy* 91, 103 (May 2002); USSC, *Report to*

punished retail cocaine dealers more harshly than wholesalers,[7] and (3) resulted in unwarranted sentencing disparity based on race.[8] To ameliorate these problems, Congress passed the Fair Sentencing Act of 2010.[9]

The Fair Sentencing Act altered the "disproportionate status quo"[10] by reducing sentences for cocaine base offenses. But it created "a new set of disparities"[11] between offenders sentenced before the Act, and offenders sentenced after. Those "disparities, reflecting a line-drawing effort, will exist whenever Congress enacts a new law changing sentences."[12] The disparity can only be resolved when "Congress intends re-opening sentencing proceedings concluded prior to a new law's effective date."[13] And now, with the enactment of the First Step

---

*Congress: Cocaine and Federal Sentencing Policy* 8 (May 2007) (all roundly criticizing the 100-1 crack/powder disparity).

[7] *Id.* (cleaned up) ("Drug importers and major traffickers generally deal in powder cocaine, which is then converted into crack by street-level sellers. But the 100-to-1 ratio can lead to the anomalous result that retail crack dealers get longer sentences than the wholesale drug distributors who supply them the powder cocaine from which their crack is produced.").

[8] *Id.* (cleaned up) ("the Commission stated that the crack/powder sentencing differential fosters disrespect for and lack of confidence in the criminal justice system because of a widely-held perception that it promotes unwarranted disparity based on race. Approximately 85 percent of defendants convicted of crack offenses in federal court are black; thus the severe sentences required by the 100—to—1 ratio are imposed primarily upon black offenders.").

[9] 124 Stat. 2372 (2010).

[10] *Dorsey v. United States*, 567 U.S. 260, 278 (2012).

[11] *Dorsey*, 567 U.S. at 280.

[12] *Id.* at 280.

[13] *Id.*

4

Act, Congress has re-opened sentencing proceedings for offenders convicted under the Anti-Drug Abuse Act of 1986.

On December 21, 2018, the First Step Act became law. Section 404 of the First Step Act re-opens sentencing proceedings for offenders convicted under the penalty regime of the 1986 Anti-Drug Abuse Act.

Section 404 of the First Step Act establishes its remedy in two steps, and it clearly applies to Mr. Goolsby at each step.

First, the First Step Act defines what offenses are covered by its remedy:

Definition of Covered Offense: In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010.[14]

Mr. Goolsby's drug offenses are "covered offenses" because Section 2 of the 2010 FSA "modified" the "statutory penalties" under § 841(b) for "violation[s]" of 21 U.S.C. §§ 841(a) and 846, and he committed such offenses before August 3, 2010.

Second, the First Step Act provides the circumstances under which a district court may impose a reduced sentence for defendants who were previously sentenced for a "covered offense":

---

[14] First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, § 404(a) (2018).

> Defendants Previously Sentenced:  A court that imposed a sentence for
> a covered offense may, on motion of the defendant . . . , impose a
> reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of
> 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time
> the covered offense was committed.[15]

This provision plainly applies to Mr. Goolsby because this Court previously "imposed a sentence" on him "for a covered offense," and he is moving for imposition of a reduced sentence.  Thus, this Court may now "impose a reduced sentence" on Mr. Goolsby for his cocaine base offenses as if the FSA were in effect. Further, Congress' direction to "impose" a reduced sentence directs that a full re-sentencing must be conducted.[16]

Third, the First Step Act provides two narrow limitations on this resentencing power.

> No court shall entertain a motion made under this section to reduce a
> sentence [1] if the sentence was previously imposed or previously
> reduced in accordance with the amendments made by sections 2 and 3 of
> the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372)
> or [2] if a previous motion made under this section to reduce the sentence

---

[15] First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, § 404(b) (2018).

[16] Federal sentencing statutes use the word "impose" to mean "sentence". 18 U.S.C. § 3553(a) ("The court shall **impose** a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection."); § 3553(a)(2) (directing courts to  consider "the need for the sentence **imposed**" in light of the purposes of punishment); § 3553(b)(1) (same) § 3553(b)(2)(iii) ("the court shall **impose** an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2)."); § 3553(c) (same) ("Statement of Reasons for **Imposing** a Sentence. The court, at the time of sentencing, shall state in open court the reasons for its **imposition** of the particular sentence"); § 3553(e) (same)); 18 U.S.C. § 3554 ("The court, in **imposing** a sentence on a defendant who has been found guilty of an offense"); 18 U.S.C. § 3555 (same); 18 U.S.C. § 3557 (same). Because "identical words used in different parts of the same Act are intended to have the same meaning," *see Department of Revenue of Oregon v. ACF Industries, Inc.*, 510 U.S. 332, 342, 114 S.Ct. 843, 849 (1994); *Sorenson v. Secretary of Treasury*, 475 U.S. 851, 860, 106 S.Ct. 1600, 1606 (1986), the Court must construe the First Step Act's use of the term "impose" to direct a re-sentencing. *See also* Fed. R. Crim. P. 32(b)(1) (using term "impose").

6

was, after the date of enactment of this Act, denied after a complete review of the motion on the merits.[17]

Neither of these limitations apply to Mr. Goolsby.  Mr. Goolsby's concurrent life sentences were not " previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010," and this is his first Section 404 motion under the First Step Act.

Under the Fair Sentencing Act of 2010, Mr. Goolsby would be subject to a mandatory minimum of 5 years, and his statutory maximum would be 40 years. Therefore, Mr. Goolsby's concurrent life sentences are illegal.[18]

Mr. Goolsby's guidelines range is also significantly lower.  The district court found that Mr. Goolsby was responsible for at least 1.5 kilograms of cocaine base, which now yields a base offense level of 32.[19]  The Eighth Circuit concluded that the district court erred in applying the three-level enhancement for assaulting a corrections officer,[20] so this enhancement would no longer apply.[21]  With application of the remaining enhancements, Mr. Goolsby's total offense level would be 40.  A

---

[17] First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, § 404(b) (2018).

[18] *See Hill v. United States*, 368 U.S. 424, 430 (1962) (explaining that a sentence imposed in excess of the statutory maximum punishment is an "illegal sentence"); *United States v. Michelsen*, 141 F.3d 867, 872 n.3 (8th Cir. 1998) (noting that an "illegal sentence" is "a sentence imposed in excess of the maximum penalty provided by statute").

[19] USSG §2D1.1(c)(4).

[20] *Goolsby*, 209 F.3d at 1081-82.

[21] *See United States v. Diaz*, 629 F. App'x 858, 859-60 (11th Cir. 2015) (where the Eleventh Circuit noted that the district court in calculating defendant's amended guidelines range under 18 U.S.C. § 3582(c)(2) did not apply sentencing enhancement that the Eleventh Circuit held was erroneously applied at defendant's original sentencing).

total offense level of 40 and a CHC of VI, corresponds to a guidelines range of 360 months to Life.  However, since the statutory maximum for the offense is only 40 years, Mr. Goolsby's advisory guidelines range would be 360 to 480 months.[22]

Moreover, when Mr. Goolsby was sentenced in 1999, the sentencing court had no other choice but to impose life sentences for his cocaine base offenses because the Guidelines were mandatory.  This Court has the discretion to impose sentences below Mr. Goolsby's advisory guidelines range.

Mr. Goolsby respectfully requests that this Court exercise its discretion and impose reduced concurrent sentences of 300 months for his cocaine base offenses. Mr. Goolsby committed these offenses over 20 years ago. (PSR, paras 8-13).  He is not the same person that he was back then.  Mr. Goolsby has also been incarcerated for over 20 years, and he has received only nine disciplinary infractions—most of them minor in nature. (Exhibit 1).  Mr. Goolsby has tried to broaden his education over the years as well, but his efforts have been hampered somewhat by his learning disabilities and lack of a GED. (PSR, para. 59; Exh. 1).

Mr. Goolsby is now 56 years old.  Statistically, he is less likely to recidivate following release.[23]   As noted by the United States Sentencing Commission,

---

[22] USSG §5G1.1(a).

[23] U.S. Sent'g Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders* 1, 3 (Dec. 2017), https://www.ussc.gov/research/research-reports/effects-aging-recidivism-among-federal-offenders.

"numerous recidivism studies document well that older offenders are at lower risk for reoffending, and the Commission's own research has confirmed this finding for federal offender populations.[24]   Specifically, the Commission's study found that only 22.2% of offenders age 55 or older at the time of release were rearrested.[25] Bureau of Prisons (BOP) studies have also found that aging inmates, which the BOP defines as inmates age 50 years and older, "have a lower rate of re-arrest than younger inmates do."[26]

In addition, the BOP does not provide programming opportunities specifically addressing the needs of aging inmates, and "the lack of programming and activities . . . makes [aging inmates] more likely to be idle and not participate in any activities or programs at all."[27]

Furthermore, in fiscal year 2017, the average sentence for offenders convicted of trafficking in cocaine base was 80 months.[28]   Only 23.9% of cocaine base trafficking offenders received a sentence of 10 years or more.[29]

---

[24] *Id.* at 10.

[25] *Id.* at 22-23.

[26] Office of Inspector General, U.S. Dep't of Justice, *The Impact of an Aging Inmate Population on the Federal Bureau of Prisons* 38 (Revised Feb. 2016).

[27] *Id.* at 30-31.

[28] U.S. Sent'g Comm'n, *Quick Facts: Crack Cocaine Trafficking* (July 2018), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Crack_Cocaine_FY17.pdf.

[29] *Id.*

Considering that Mr. Goolsby's concurrent life sentences are illegal and that he is not likely to recidivate[30] and that the average sentence for offenders convicted of similar offenses is 80 months, Mr. Goolsby respectfully requests that this Court impose reduced concurrent sentences of 300 months—followed by four years of supervised release.

| Mr. Goolsby's Pre-FSA Sentencing Range/Sentence v. Mr. Goolsby's Post-FSA Sentencing Range/Sentence | | |
|---|---|---|
| Components | Pre-FSA Sentencing Range/Sentence | Post-FSA Sentencing Range/Sentence |
| Statutory Range | 10 years-Life | 5-40 years |
| Base Offense Level | 38 | 32 |
| Adjusted Offense Level | 49 | 40 |
| Criminal History Category | VI | VI |
| Guidelines Range | Mandatory: Life | Advisory: 360 to 480 months |
| Sentence Imposed or suggested | Concurrent Life sentences (court imposed a mandatory 5-year term of supervised release in the event Mr. Goolsby's sentences were commuted) | Concurrent sentences of 300 months 4 years supervised release *Suggested sentence* |

---

[30]  *See United States v. Tucker,* No. 3:00-CR-00246-2, 2019 WL 324423, at *2 (S.D. Iowa Jan. 23, 2019) (noting that the defendant "turned fifty last year, an age at which the Sentencing Commission has found that recidivism rate begins to decline" and imposing a reduced sentence of time served under the First Step Act of 2018).

Wherefore, Mr. Goolsby respectfully requests that this Court schedule a resentence hearing[31] and reduce his cocaine-base sentences to 300 months, followed by four years of supervised release.

Respectfully Submitted,

LISA G. PETERS
FEDERAL DEFENDER

By:   Lisa G. Peters, Bar No. 89099
      Federal Defender
      The Victory Building, Suite 490
      1401 West Capitol Avenue
      Little Rock, AR 72201
      (501) 324-6113
      E-mail: Lisa_Peters@fd.org

---

[31] Although the First Step Act requires this Court to hold a resentencing hearing with Mr. Goolsby present, Mr. Goolsby may waive his right to a resentencing hearing.  If this Court is inclined to grant Mr. Goolsby's motion for a reduced sentence, then a hearing is unnecessary and he will agree to waive his right to a hearing.  But if this Court is hesitant in granting Mr. Goolsby's motion, then he respectfully asks that this Court hold a resentencing hearing with him present.