**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No.  4:97CR00200-03-JLH |
| | ) | |
| JAMES GOOLSBY | ) | |

**RESPONSE OF THE UNITED STATES TO GOOLSBY'S MOTION FOR RESENTENCING AND IMPOSITION OF A REDUCED SENTENCE PURSUANT TO SECTION 404 OF THE FIRST STEP ACT OF 2010, AND SUPPLEMENT TO ITS RESPONSE TO GOOLSBY'S MOTION PURSUANT TO 18 U.S.C. § 3582**

Comes now the United States of America, by and through its attorneys, Cody Hiland, United States Attorney for the Eastern District of Arkansas, and Stephanie Mazzanti, Assistant United States Attorney for said district, and responds to Petitioner James Goolsby's Motion for Resentencing and Imposition of a Reduced Sentence Pursuant to Section 404 of the First Step Act of 2010 (DCD 288), and supplements its Response to Goolsby's Motion Pursuant to 18 U.S.C. § 3582 (DCD 274).

**I.      Factual Background**

On May 14, 1999, a jury convicted James Goolsby ("Goolsby") of conspiracy to distribute more than 50 grams of cocaine base under 21 U.S.C. § 846 and possession with intent to distribute more than 50 grams of cocaine base under 21 U.S.C. § 841(a)(1), but acquitted him of attempting to kill a grand jury witness. (DCD 135).

At trial, Tasha Allen testified about the multiple trips she made with Goolsby to California and Texas to obtain cocaine and crack cocaine.  Trial Tr., Vol. I, May 12, 1999, p. 95-159.  Allen estimated that Goolsby brought approximately four to five kilograms of cocaine and crack cocaine from California and Texas to Arkansas.  *Id*. at 155.  On the first trip to California, Goolsby purchased one-half kilogram to one kilogram of crack cocaine.  *Id*. at 122.  On the second trip,

Goolsby obtained approximately one kilogram of crack cocaine. *Id*. at 128. She accompanied Goolsby to Texas for two additional trips to obtain narcotics. *Id*. at 133. Allen believed Goolsby obtained approximately one kilogram of powder cocaine on the third trip, and that Goolsby had someone else "rock it up" into crack cocaine when they returned. *Id*. at 146-47. On the fourth trip, Goolsby obtained one-half kilogram to one kilogram of crack cocaine. *Id*. at 152. She observed Goolsby sell crack cocaine and knew that multiple people, including herself, sold crack cocaine for him. *Id*. at 113-14, 155-59.

On December 12, 1997, Allen testified before the grand jury. *Id*. at 161. When she returned home that evening, she had about 25 calls from Goolsby at the jail. *Id*. at 165. Goolsby made contact with her, and she told him not to call her anymore. *Id*. at 166-67. Thereafter, Goolsby's family members came to her home and met with her roommate, the only person Allen told about her grand jury appearance. *Id*. at 161, 168-69. Late that night, she heard gunshots and called 911. *Id*. at 173. The following morning when she went outside, she saw that her house had been shot up, including a bullet through the couch in the living room under the area where her head was laying and one through the window. *Id*.

Terence Thornton testified that he sold narcotics that he obtained from Goolsby and Goolsby's mother. Trial Tr., May 13, 1999,Vol. II, p. 235. He estimated that Goolsby was selling a kilogram to a kilogram and a half every month, and sometimes twice a month during Thornton's relationship with Goolsby's sister. *Id*. at 238. Thornton met Goolsby's sister at the beginning of 1996, moved in with her in the middle of 1996, and lived with her for approximately one year. *Id*. at 229-30.

Johnny Lee Echols, who was in jail with Goolsby, testified that he overhead Goolsby tell someone over the telephone to find Tasha and get her to change her statement to the authorities.

*Id*. at 287.   Echols helped Goolsby try to find Allen by calling Allen's house after Goolsby provided the phone number.  *Id*.at 289.   After speaking with an individual, Echols told Goolsby that Allen was going to Little Rock to testify.  *Id*. at 290.   Goolsby told Echols that "he should have killed the bitch when he started to."  *Id*. at 288, 290.   Goolsby told Echols that something was going to happen to Allen.  *Id*. at 291.   A couple of days later, Goolsby told Echols that someone shot up Allen's house.  *Id*. at 292.

Officer Ray Kendal testified about the evidence of the shooting at Allen's residence, including that a large-caliber weapon shot the house, and he recovered the bullet from between the pillow and the back of the couch.  *Id*. at 319.   Officer John Zuber testified that he participated in the execution of a search warrant at Goolsby's mother's residence, who was clearly implicated as a co-conspirator during the testimony of Allen and Thornton, and recovered a buried bag of off-white rock substance.  *Id*. at 331-32.   Sergeant Mark Calhoun testified that Government's Exhibit 2 was the bag of crack cocaine found buried in the backyard.  *Id*. at 382.   Nick Dawson, a drug chemist, testified about the various drug exhibits discussed at trial, including Government's Exhibit 2, consisting of 333 grams of 67 percent pure cocaine base.  *Id*. at 406-13.   The drugs recovered during this search formed the basis of Count 2 of the Second Superseding Indictment.

During the motion for judgment of acquittal, the presiding trial judge noted, "I completely agree, there are so many things that would link [the shooting at Allen's house] to Mr. Goolsby.  I wonder though, if the jury could conclude beyond a reasonable doubt there was an attempt to kill her as opposed to just shoot up her house and scare her.  Because firing a shotgun at a house isn't going to kill anybody inside.  Firing a .357 can, if you're lucky.  But you've got to get pretty lucky and the person inside has to be pretty unlucky.  I'm concerned about it. I'm going to take it under advisement and think about it."  *Id*. at 418.   The Court later denied the motion noting that "when

you go fire a .357 Magnum into a house, it's just like the person who fires into a crowd. . . . I'm going to deny the motion. I'm going to let the jury decide the case."

The Presentence Investigation Report ("PSR") stated that Goolsby was connected to 6.5 kilograms of cocaine base, which resulted in a base offense level of 38.   In the Statement of Reasons set forth in the Judgment, the Court "adopt[ed] the factual findings and guideline application in the presentence report."   In discussing the drug quantity, the Court noted that it was "having a little bit of trouble seeing that there's not overwhelming evidence of at least another 1.167 kilograms, even if you sufficiently attack their credibility as to the full amount and all the trips that they testified to."  Sent. Tr. at 40.  Defense counsel even acknowledged, "We know there was 333 grams, for sure, at Ms. Goolsby's house, and I'm convinced the jury felt Mr. Goolsby was in a conspiracy at least with respect to that amount."  *Id*. at 41.  The Court concluded, "I think the evidence at the very least preponderates, and clearly preponderates that Mr. Goolsby was involved in a conspiracy involving at least, at least 1.5 kilograms, probably considerably more than that, but certainly enough to support a base offense level of 38.  *Id*. at 43.

Goolsby also received three additional points for an official victim adjustment, four points for a role in the offense adjustment, two points for an obstruction of justice adjustment, and two points for reckless endangerment during flight, resulting in a total of eleven additional points.  As to the enhancements, at the sentencing hearing, Detective Kelvin Sergeant testified that he was approaching 914 Barraque to serve a federal search warrant at Goolsby's residence in a marked police vehicle and observed Goolsby sitting in the yard with two children. Sent. Tr. at p. 18.  One child was standing to his left, and another was standing between his legs. *Id*. at 18-19.  The children were approximately 1 and 2 years old. *Id*. at 19.  As officers approached, Goolsby jumped up and pushed the child standing between his legs. *Id*.  The child started rolling in the path of the police

4

vehicle, and Goolsby took off running. *Id*. Goolsby was not apprehended that day. *Id*. at 20. Officers grabbed the children so they would not get into the street, and ultimately had to call DHS because nobody else was at the residence. *Id*. at 20-21.

Tracy Wilson, a dispatcher and jailer with the Maumelle Police Department, testified that on August 22, 1999, she let Goolsby outside to smoke in a fenced area. *Id*. at 28-29. When she went into a cell to remove garbage, Goolsby came up behind her, grabbed her, and held a pointed object that looked like a screwdriver against her neck. *Id*. at 30. Goolsby told her, "Don't move, get down," and she complied. *Id*. Goolsby told her that he would kill her if she did not do what he said. *Id*. at 30-31. Goolsby drug her from one cell and back to another cell, told her to get on her stomach, and handcuffed her behind her back. *Id*. at 31. Goolsby grabbed her pepper foam, sprayed her multiple times, and locked her in the cell. *Id*. at 32.

The Court found that Goolsby had 23 criminal history points, "almost twice the number of criminal history points to get to the highest level." *Id.* at 45. His total offense level was 49 and his criminal history category was VI, resulting in a guideline imprisonment rage of life. On September 21, 1999, he was sentenced to life in prison. (Doc. 150). He filed a notice of appeal on September 27, 1999.

On appeal, Goolsby argued that this Court abused its discretion in denying his motion for a mistrial, that he was entitled to a new trial, that this Court's drug quantity claim was erroneous, that his sentence was improperly enhanced for reckless endangerment, and that his sentence was improperly enhanced because he assaulted a corrections officer during his escape from federal custody while awaiting sentencing. (DCD 152); No. 99-3697 (8th Cir.). The Eighth Circuit disagreed with all but his final argument, stating that an official victim enhancement under § 3A1.2 was improper because the corrections officer was not a victim under the offense of conviction.

*United States v. Goolsby*, 209 F.3d 1079 (8th Cir. 2000).  However, because a life sentence was still required after the enhancement was removed, the Eighth Circuit held it was harmless error. *Id.*  The judgment of this Court was affirmed by the Eighth Circuit on April 19, 2000. *Id.*

On May 29, 2001, Goolsby filed a motion for post-conviction relief pursuant to 28 U.S.C. § 2255. (DCD 170). This Court denied the § 2255 motion on March 14, 2002, as well as a certificate of appealability.  (DCD 185, 188).  The Eighth Circuit denied Goolsby's application for a certificate of appealability and dismissed his appeal on December 5, 2002.  (DCD 189, 190); No. 02-2311 (8th Cir.).  On January 4, 2006, Goolsby applied for permission to file a successive habeas petition, which was later denied on April 5, 2006. (DCD 213, 214); No. 06-2019 (8th Cir.).

Goolsby filed a motion to reduce his sentence pursuant to 18 U.S.C. § 3582 on April 6, 2009.  (DCD 215).  This Court denied the motion, holding that § 3582 was inapplicable. (DCD 221).  He filed a notice of appeal of the order on April 29, 2009. (DCD 223); No. 09-1990 (8th Cir.).  The Eighth Circuit affirmed this Court's final judgment. (DCD 227); No. 09-1990 (8th Cir.).

Goolsby filed a motion to vacate pursuant to 28 U.S.C. § 2255 on August 23, 2013.  (DCD 233).  The United States responded on September 25, 2013. (DCD 238).  On October 28, 2013, this Court denied his motion to vacate and for certificate of appealability.  (DCD 243, 245, 246).  Goolsby appealed, and the Eighth Circuit denied the application for a certificate of appealability and permission for file a successive petition on July 4, 2014.  (DCD 248, 262); No. 13-3752 (8th Cir.).

On May 8, 2018, Goolsby filed a motion for retroactive application of sentencing guidelines to 18 U.S.C. § 3582. (DCD 264).  In its order directing the United States to respond to Goolsby's request to reduce his sentence based on the "*Holloway* doctrine," this Court found that the Guideline amendments cited by Goolsby, including Amendment 782, did not lower Goolsby's

6

guideline range.  (DCD 265).  Goolsby later moved to withdraw the motion on May 14, 2018, and the Court granted his motion to withdraw on May 16, 2018. (DCD 268, 269).

On May 14, 2018, Goolsby filed a petition to file a successive § 2255 petition. No. 18-2050 (8th Cir.).  The petition was denied on July 30, 2018.  No. 18-2050 (8th Cir.).  On May 29, 2018, Goolsby filed a motion to recall the Eighth Circuit's 2000 mandate, arguing that in light of retroactive changes to the sentencing guidelines, the error that the Eighth Circuit acknowledged in its 2000 mandate was no longer harmless.  No. 99-3697 (8th Cir.).  The Eighth Circuit denied his motion on July 26, 2018. No. 99-3697 (8th Cir.).

On August 31, 2018, Goolsby filed a renewed motion to reduce his sentence pursuant to 18 U.S.C. § 3582, arguing that his sentence should be reduced in light of Amendment 782 to the Guidelines and pursuant to the "*Holloway* doctrine."  (DCD 271).  The United States responded. (DCD 274).  On January 15, 2019, this Court stayed the issues raised in his renewed motion to reduce his sentence pursuant to 18 U.S.C. § 3582 until it can rule on the present motion for resentencing.  (DCD 286).  On February 15, 2019, Goolsby filed the present motion for resentencing, alleging that pursuant to the Fair Sentencing Act of 2010, which was made retroactive by the First Step Act of 2018, this Court should reduce his sentence from life to 300 months' imprisonment.  (DCD 288).

## II.    First Step Act

Goolsby asks the Court to reduce his sentence in light of § 404 of the First Step Act of 2018 ("First Step Act").  Section 404 of the First Step Act provides that if a defendant who committed a violation of a criminal statute before August 3, 2010 for which the penalties were modified by section 2 or 3 of the Fair Sentencing Act, a court may "impose a reduced sentence as if sections 2 or 3 of the Fair Sentencing Act…were in effect at the time the covered offense was

committed." Pub. L. No. 115-391, § 404, 132 Stat. 5194, 015 (2018). Section 2 of the Fair Sentencing Act increased the threshold amount of cocaine base in 21 U.S.C. §§ 841(b)(1)(A)(iii) and 960(b)(1)(C) from 50 grams to 280 grams and increased the threshold amount of cocaine base in 21 U.S.C. §§ 841(b)(1)(B)(iii) and 960(b)(2)(C) from 5 grams to 28 grams. In other words, Section 404 only permits a court to reduce a defendant's sentence for a crack cocaine offense as if it had imposed the sentence after the Fair Sentencing Act of 2010 lowered the statutory sentencing range for crack cocaine offenses. *Id.* However, the decision to reduce a sentence is within a court's discretion and is not required by the First Step Act. *Id.*

Goolsby was convicted of conspiracy to distribute more than 50 grams of cocaine base under 21 U.S.C. § 846 and possession with intent to distribute more than 50 grams of cocaine base under 21 U.S.C. § 841(a)(1). (DCD 135). The PSR stated that Goolsby was connected to 6.5 kilograms of cocaine base. Based on that drug quantity, his base offense level was 38. His base offense level was increased by eleven points for an official victim adjustment, a role in the offense adjustment, an obstruction of justice adjustment, and reckless endangerment. With a total offense level of 49 and a criminal history category of VI, both the guideline range of imprisonment and the statutory maximum term of imprisonment was life. At the sentencing hearing, the Court determined that the total amount of cocaine base involved in the offense was "at least 1.5 kilograms, probably considerably more than that," and the Court adopted the findings of the PSR in the Statement of Reasons. The Court imposed a term of life imprisonment.

Had Section 2 of the Fair Sentencing Act been in effect at the time of Goolsby's sentencing, it would have had no impact on his statutory sentencing range. Because the offense of conviction involved 6.5 kilograms of cocaine base, and at the very least 1.5 kilograms of cocaine base, Section 841(b)(1)(A) still would have applied, resulting in the same statutory range of imprisonment of

ten years to life.  Goolsby acknowledges that the district court found he was responsible for at least 1.5 kilograms of cocaine base.  (DCD 288 at 7).  Goolsby's counsel even conceded at sentencing that the 333 grams of cocaine base were attributable to Goolsby.  Thus, contrary to Goolsby's argument, his sentence is not illegal.  The retroactive application of the Fair Sentencing Act has no effect on Goolsby's statutory range of imprisonment, and the record supports a finding that the offense of conviction involved 6.5 kilograms of cocaine base, well above the 280 grams of cocaine base required to impose a ten-year mandatory minimum.[1]  His prior sentencing reduction rejections are not tied to the mandatory minimum in this case; rather, the rejections were due to his Guidelines range of life.

To the extent Goolsby implies that the sentence is now illegal in light of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which barred increase of a statutory-maximum sentence based on facts found by a judge alone, and *Alleyne v. United States*, 570 U.S. 99 (2013), which prohibited an increased statutory minimum penalty, these decisions do not apply retroactively.  *Walker v. United States*, 810 F.3d 568, 574 (8th Cir. 2016).  *See also United States v. Anderson*, 707 F.3d 973, 975 (8th Cir. 2013) (noting that a Court cannot find facts at odds with previously factual findings, but nothing prohibits a Court from "making new factual findings consistent with the original sentencing determination and supported by the record").  Moreover, the First Step Act does not involve any "increase" in a sentence based on judge-found facts.  To the contrary, it involves a potential reduction in sentence.  Such a conclusion is supported by the additional

---

[1] At the time of the original sentencing, the highest base offense level of 38 under U.S.S.G. § 2D1.1(c)(1) applied in cases involving 1.5 kilograms or more of cocaine base.  Thus, although the Court had no need to make specific findings beyond this amount, the Court found the defendant "clearly" responsible for "at least 1.5 kilograms, probably considerably more than that."  In the Statement of Reasons, the Court "adopt[ed] the factual findings and guideline application in the presentence report."

language in the First Step Act that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section." *See, e.g., Dillon v. United States*, 560 U.S. 817 (2010). Thus, the charging language of the original indictment does not control the analysis; rather, the Court relies upon findings that Goolsby's offense involved well over 280 grams of cocaine base.

Moreover, given the known quantity of cocaine base involved in the offense (well over 280 grams), to sentence Goolsby as if he were not subject to a ten-year mandatory minimum penalty would put him in a more favorable position than defendants sentenced under the Fair Sentencing Act, which is contrary to Congress' intent. Defendants sentenced under the First Step Act should not receive a windfall not available to defendants prosecuted under the Fair Sentencing Act, which would create unwarranted sentencing disparities among similarly situated offenders. 18 U.S.C. § 3553(a). Therefore, Goolsby's motion for resentencing under the First Step Act should be denied.

Goolsby asserts that the First Step Act's direction to "impose" a reduced sentence directs that a full resentencing must be conducted, and that the Court may impose a sentence of 300 months' imprisonment. The Act provides that the Court may "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." In other words, the First Step Act allows the Court to act as if the provisions of the Fair Sentencing Act increasing the quantity thresholds were in effect at the time of sentencing, and nothing more as it pertains to this case. As set forth above, under the Fair Sentencing Act, Goolsby would have been subject to a ten-year mandatory minimum and no reduction is warranted.

Even if the First Step Act somehow provided relief to Goolsby, which the United States does not concede, the First Step Act does not authorize plenary resentencing and the Court should use its discretion to deny relief.  In similar circumstances, the Supreme Court held that a reduction in sentence under § 3582(c)(2) does not involve a plenary resentencing.  *Dillon*, 560 U.S. 817. The Supreme Court addressed the statutory language allowing the court to "reduce" a term of imprisonment based on a retroactively applicable amendment, emphasizing that the text of § 3582(c)(2), "together with its narrow scope, shows that Congress intended to authorize only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding." *Id*. at 825-26.  The First Step Act authorizes limited adjustments to otherwise final sentences to a limited set of defendants.  Even if the First Step Act applied, the Court should decline to reduce Goolsby's sentence.

## III.   18 U.S.C. § 3582(c)(2) Supplement and 18 U.S.C. § 3553(A) Factors

To the extent Goolsby seeks relief pursuant to 18 U.S.C. § 3582(c)(2), the United States incorporates its arguments set forth in its previously filed response, and supplements that response as set forth below  (DCD  274).  Additionally, the Eighth Circuit has held that even post-*Booker*, U.S.S.G. § 1B1.10(b)(2)(A) "bars a district court from reducing the sentence of a defendant below the bottom of the amended guidelines range, unless the defendant's original sentence was below the guidelines range applicable at the time of sentencing." *United States v. Higgins*, 584 F.3d 770, 772 (8th Cir. 2009).  Moreover, § 3582(c)(2) proceedings "do not constitute a full resentencing." *United States v. Brown*, 604 F.3d 1044, 1046 (8th Cir. 2010).

As set forth in the United States' prior response to Goolsby's motion pursuant to 18 U.S.C. § 3582(c)(2), Goolsby was convicted of serious offenses.  As discussed above, the United States has obtained a copy of the trial and sentencing transcripts, which are relevant to the Court's

determination.  As previously argued, and as supported by the record, during the offense, Goolsby knocked over a small child attempting to flee from law enforcement, causing the child to roll over on the ground and nearly be struck by one of the police units.

While awaiting sentencing, Goolsby assaulted a guard with a weapon and escaped from custody. Goolsby pushed the guard to the ground and stated, "Get down or I'll kill you."  Goolsby dragged the guard to a jail cell, handcuffed, and pepper-sprayed.  Under the current U.S.S.G. § 3A1.2(c)(2), Goolsby would arguably receive a 6 level enhancement for the assault of the prison guard.

Although acquitted of the charge, Goolsby was indicted for causing an attempt to kill a witness with intent to retaliate.  In denying the motion for judgment of acquittal, the Court "completely agree[d], there are so many things that would link [the shooting at Allen's house] to Mr. Goolsby."  The trial record reflects Goolsby's desire to kill the victim and circumstances that go well beyond coincidence.

Goolsby had 23 criminal history points, which is well in excess of the points required for the highest criminal history category.  The PSR reflects that Goolsby was convicted of many serious offenses, including two cases involving burglary and multiple narcotics trafficking and possession offenses.

In all, this is not a typical defendant convicted of a cocaine base offense.  Goolsby was engaged in a long-term drug conspiracy, and repeatedly disregarded the value of human life through his conduct.  He valued his freedom over the safety of a very small child.  He valued his freedom over the jailer he assaulted.  He valued his freedom over the life of the mother of his child who dared testify against him.  The Court should deny any reduction in sentence.

WHEREFORE, for the foregoing reasons, the United States respectfully requests that Goolsby's motion be denied.

Respectfully submitted,

CODY HILAND,
United States Attorney

STEPHANIE MAZZANTI
Bar No. 2006298
Assistant U.S. Attorney
P.O. Box 1229
Little Rock, AR 72203
(501) 340-2600
Stephanie.Mazzanti@usdoj.gov