# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**UNITED STATES OF AMERICA**                                                           **PLAINTIFF**

**v.**                           **Case No. 4:97-cr-00200-LPR-3**

**JAMES GOOLSBY**                                                         **DEFENDANT**

## ORDER

On November 24, 2020, Defendant James Goolsby filed a Pro Se Motion for Compassionate Release and for the Appointment of Counsel.[1] On November 25, 2020, the Government filed a Response in Opposition.[2] Mr. Goolsby's Motion asserts that compassionate release is warranted because USP Leavenworth—where Mr. Goolsby is confined—is experiencing a COVID-19 outbreak.[3] It is unclear from Mr. Goolsby's Motion whether he is arguing (1) that he is presently infected with COVID-19, (2) that he is at risk for reinfection, given the current outbreak, or (3) both that he is currently infected and that he may become infected again in the future.[4] The Government's Response indicates that Mr. Goolsby tested positive for COVID-19 on September 4, 2020, and that the last medical report regarding Mr. Goolsby's COVID-19 diagnosis was on September 15, 2020.[5] The report indicated that Mr. Goolsby was doing well and that his symptoms had improved over the past 48 hours.[6] For the following reasons, the Court will deny Mr. Goolsby's Motion in its entirety.

---

[1] Doc. 307.

[2] Doc. 313.

[3] Doc. 307 at 3.

[4] *Id.* at 2-5.

[5] Doc. 313 at 5.

[6] *Id.* at 5.

## Mr. Goolsby's Crime

On September 17, 1999, Mr. Goolsby was sentenced to life imprisonment for conspiracy to distribute more than 50 grams of cocaine base, and to life imprisonment for the distribution of more than 50 grams of cocaine base.[7] The trial judge noted that Mr. "Goolsby's case was 'one of the worst drug cases he had seen in his twelve years on the bench.'"[8] Among other things, Mr. Goolsby's offense level was increased for his role as a leader in extensive criminal activity, for obstruction of justice, and for reckless endangerment during flight.[9] Additionally, Mr. Goolsby qualified as a career offender.[10] In fact, Mr. Goolsby's "criminal history far exceeded the number of points required to reach the highest category under the sentencing guidelines."[11]

Mr. Goolsby was also charged with attempting to kill one of the government's witnesses in the case against him.[12] He was acquitted of this charge.[13] According to the trial judge, there was a wealth of evidence linking Mr. Goolsby to the shooting, just not enough evidence to permit a jury to conclude "beyond a reasonable doubt there was an attempt to kill [the witness] as opposed

---

[7] Doc. 149. *See* Doc. 150 at 1. Mr. Goolsby was sentenced to life imprisonment for each count. Count 2 was to run concurrently with count 1. *Id.* On April 3, 2019, the Court reduced Mr. Goolsby's life sentences to 40 year sentences for each count. Docs. 293, 294. Once again, count 2 runs concurrently with count 1. *Id.*

[8] *United States v. Goolsby*, 806 F. App'x 502, 503 (8th Cir. 2020) (unreported).

[9] Doc. 233-1 at 6; Doc. 293 at 1-2. According to the Government, when police arrived at Mr. Goolsby's residence, Mr. Goolsby pushed a child in front of the officers' vehicle as he fled the scene. Doc. 313 at 1; *see also* Doc. 233-1 at 6.

[10] Doc. 293 at 1-2, 5; Doc. 233-1 at 8. Mr. Goolsby has an extensive criminal record, which includes: a burglary conviction in February 1979; a probation revocation in April 1979; a parole violation in November 1980; burglary and theft convictions in May 1981; multiple possession of PCP convictions in August 1983; a parole violation in July 1986; a possession of crack cocaine for sale conviction in July 1986; convictions for resisting arrest and possession of a controlled substance in January 1989; a possession of a controlled substance conviction in August 1989; a parole violation in August 1990; and a conviction for possession of crack and cocaine in 1992. Doc. 313 at 11; Doc. 233-2 at 8-10.

[11] *Goolsby*, 806 F. App'x at 503.

[12] *United States v. Goolsby*, 209 F.3d 1079, 1080 (8th Cir. 2000).

[13] *Id.*

to just shoot up the house and scare her."[14]  Finally, while awaiting sentencing for his cocaine conspiracy and distribution convictions, Mr. Goolsby escaped from federal custody and "assaulted a corrections officer."[15]  "The jailer testified at sentencing that [Mr.] Goolsby approached him from behind, grabbed him, held a sharp object to his neck, threatened to kill him if he did not obey, dragged him 15 or 20 feet into a cell, handcuffed him, and sprayed him with pepper foam before escaping."[16]

## Jurisdiction

It is somewhat unclear whether Mr. Goolsby fully exhausted his administrative remedies under 18 U.S.C. § 3582(c)(1).  This Court has held that "a defendant must fully exhaust his administrative remedies *unless* he hasn't received an initial answer from the warden within 30 days of the warden's receipt" of a request for compassionate release.[17]  Mr. Goolsby's Motion states that he "raised concerns to the Warden of his place of confinement in reference to COVID-19 . . . and thus requested COMPASSIONATE RELEASE, but the Warden denied such request."[18]  The Government indicates that Mr. Goolsby submitted his request to the warden on July 7, 2020.[19]  And the Government confirms that the warden denied Mr. Goolsby's request.[20]  But neither party expressly indicates whether the warden denied the request within 30 days of the warden's receipt of the request.

The Court will operate under the assumption that the warden failed to act within 30 days

---

[14] Doc. 293 n.2 at 5.

[15] *Goolsby*, 209 F.3d at 1081.  Doc. 313 at 2.

[16] Doc. 293 at 6; *see also* Doc. 313 at 2.

[17] *United States v. Smith*, 460 F. Supp. 3d 783, 794 (E.D. Ark. 2020).

[18] Doc. 307 at 2.

[19] Doc. 313 at 2.

[20] *Id.*

of the receipt of Mr. Goolsby's request for the following two reasons.  First, it has been nearly five months since Mr. Goolsby submitted his request to the warden.  Given Mr. Goolsby's COVID-19 concerns and the fact that Mr. Goolsby contracted COVID-19 in early September, it stands to reason that Mr. Goolsby would have filed his Motion sooner had he thought that he was entitled to do so.  Presumably, this delay is attributable to the warden's failure to respond, and to Mr. Goolsby's imperfect understanding of when a prisoner is entitled to file directly with the Court under 3582(c)(1)(A).  Second, and more significantly, the Government is well aware of the Court's position on exhaustion.[21]  Thus, the Government's silence on the topic of exhaustion strongly suggests that there are no exhaustion issues lurking behind the scenes.  The Court will therefore consider the merits of Mr. Goolsby's Motion.

## Compassionate Release

Mr. Goolsby is not entitled to compassionate release for a number of reasons.  Most significantly, Mr. Goolsby is a danger to others and the community.  Under 18 U.S.C. § 3582(c)(1)(A), the Court cannot reduce a term of imprisonment unless "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  Section 1B1.13 of the United States Sentencing Guidelines serves as the Sentencing Commission's "general policy statement" regarding the "appropriate use" of the sentence modification provisions found in 18 U.S.C. § 3582(c).[22]  According to section 1B1.13(2), the Court may not release a prisoner unless the prisoner "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

---

[21] *Smith*, 460 F. Supp. 3d at 794.

[22] 28 U.S.C. § 994(a)(2).  "The Commission is required by 28 U.S.C. § 994(a)(2) to develop general policy statements regarding application of the guidelines or other aspects of sentencing that in the view of the Commission would further the purposes of sentencing (18 U.S.C. § 3553(a)(2)), including, among other things, the appropriate use of the sentence modification provisions set forth in 18 U.S.C. § 3582(c)."  FEDERAL SENTENCING GUIDELINES § 1B1.13 Background (U.S. SENTENCING COMM'N 2020).

According to § 3142(g), the Court must consider the following four factors "in determining whether there are conditions of release that will reasonably assure" the safety of others and the community:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.[23]

Having considered all four of the required factors, the Court notes the following significant findings. With respect to the first factor, Mr. Goolsby's sentence relates to crimes involving a controlled substance. As it relates to the second factor, the trial judge noted that Mr. Goolsby's case was quite possibly the worst drug case he had seen in his first twelve years on the bench.[24] And aside from the immediate cocaine conspiracy and distribution charges, Mr. Goolsby assaulted a guard, escaped from federal custody, and was charged with (but later acquitted of) attempting to kill a government witness. With respect to the third factor, little is known regarding Mr. Goolsby's

---

[23] 18 U.S.C. § 3142(g).

[24] *Goolsby*, 806 F. App'x at 503.

5

current character, mental condition, family ties,[25] and community ties.  What the Court does know, however, is that Mr. Goolsby has an extensive criminal record involving drugs and violence.[26]  And prior to his incarceration, Mr. Goolsby heavily abused alcohol, marijuana, and cocaine.[27]

Finally, as it relates to the fourth factor, Mr. Goolsby remains a serious danger to others and the community.  Mr. Goolsby is 58 years old.[28]  He has a long track record of violence, and he has repeatedly displayed a blatant disregard for the law.  Nothing in Mr. Goolsby's Motion for Compassionate Release indicates that Mr. Goolsby no longer presents a danger to others and the community.  Accordingly, because the safety of others and the community cannot be reasonably assured, the Court cannot reduce Mr. Goolsby's sentence under 18 U.S.C. § 3582(c)(2).  There is no reason for the Court to continue its analysis given this determination.  Mr. Goolsby's Motion for Compassionate Release is DENIED.  Mr. Goolsby's Motion for the Appointment of Counsel is DENIED as MOOT.[29]

IT IS SO ORDERED this 1st day of December 2020.

LEE P. RUDOFSKY
UNITED STATES DISTRICT COURT

---

[25] Mr. Goolsby's mother was one of Mr. Goolsby's co-defendants.  Doc. 233-1 at 1.

[26] Mr. Goolsby's extensive criminal record includes: a burglary conviction in February 1979; a probation revocation in April 1979; a parole violation in November 1980; burglary and theft convictions in May 1981; multiple possession of PCP convictions in August 1983; a parole violation in July 1986; a possession of crack cocaine for sale conviction in July 1986; convictions for resisting arrest and possession of a controlled substance in January 1989; a possession of a controlled substance conviction in August 1989; a parole violation in August 1990; and a conviction for possession of crack and cocaine in 1992.  Doc. 313 at 11; Doc. 233-2 at 8-10.

[27] Doc. 233-1 at 11.  Mr. Goolsby has completed at least one substance abuse treatment program.

[28] Doc. 313 at 5.

[29] The Court notes that "there is no right to appointed counsel in sentence modification proceedings under § 3582(c)." *United States v. Harris*, 568 F.3d 666, 669 (8th Cir. 2009).